S93A1060, S93X1061, S93A1062. STONE MAN, INC. et al. v.
GREEN et al. (three cases).

(435 SE2d 205)

HUNT, Presiding Justice.

These three cases center around the operation of a quarry by defendant Stone Man, Inc. (Stone Man) and have been consolidated for

consideration by this Court. The plaintiff landowners, who live near or adjacent to the quarry, brought an action seeking to have the quarry declared a nuisance and closed. Finding the quarry to be a nuisance, a jury awarded the landowners compensatory and punitive damages. The trial court awarded the plaintiffs attorney fees and granted a partial injunction which allowed Stone Man to continue operating the quarry but imposed restrictions and conditions on the operation in addition to those mandated by state and federal law. The trial court denied Stone Man's motions for j.n.o.v. and new trial, as well as the landowners' motion for a second injunction to abate completely operation of the quarry. Stone Man appeals the initial injunction and the denial of its motions for j.n.o.v. and new trial; the landowners cross-appeal the initial injunction and appeal the denial of the second injunction. We affirm in part and reverse in part.

1. Stone Man contends that the award of punitive damages in this case is not supported by the evidence. We agree. Under Georgia law,

> [p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

OCGA § 51-12-5.1 (b). In addition, the purpose of punitive damages is not to provide compensation to the plaintiff but rather "to punish, penalize, or deter a defendant." OCGA § 51-12-5.1 (c).

The evidence shows that the land on which the quarry is operated is zoned for mining by the Bartow County Commission. Stone Man has been issued the surface mining permit required by OCGA § 12-4-70 et seq., the air quality permit required by OCGA § 12-9-1 et seq., and the water quality permit required by OCGA § 12-5-20 et seq., and has operated in compliance with the standards established by those permits. In addition, with the exception of an incident in 1989, it is undisputed that Stone Man has been in compliance with the Blasting Standards Act (OCGA § 25-8-1) and, in 1990, voluntarily reduced the intensity of blasting in an effort to lessen its undesirable consequences. Finally, Stone Man is in compliance with all federal environmental regulations.

While compliance with the law will not preclude a finding that business activities constitute a nuisance, *Galaxy Carpet Mills v. Massengill*, 255 Ga. 360 (1) (338 SE2d 428) (1986), such compliance does tend to show that there is no clear and convincing evidence of "wilful misconduct, malice, fraud, wantonness, oppression, or that entire

want of care which would raise the presumption of a conscious indifference to consequences." *General Refractories Co. v. Rogers*, 240 Ga. 228, 230 (239 SE2d 795) (1977). This is especially true in the case of a commercial enterprise the operation of which is accompanied by a certain amount of unpleasant but unavoidable effects or byproducts. Stone Man's compliance with county, state, and federal regulations is not the type of behavior which supports an award of punitive damages; indeed, punitive damages, the purpose of which is to "punish, penalize or deter," are, as a general rule, improper where a defendant has adhered to environmental and safety regulations. Accordingly, we hold that the award of punitive damages in this case is not supported by the evidence and must be reversed.

2. Stone Man argues that the nuisance standard of OCGA § 41-1-1 is unconstitutionally vague because a jury was allowed to find the operation of the quarry a nuisance even though the quarry is on land zoned for mining and is operated in compliance with all state and federal regulations. As Stone Man did not raise this issue at the jury trial, it is deemed waived. *Hammond v. Paul*, 249 Ga. 241 (1) (290 SE2d 54) (1982). In addition, under *Galaxy Carpet Mills v. Massengill*, 255 Ga. 360 (2), supra, such an argument is without merit.

3. In their cross-appeal, the landowners contend that the trial court erred by imposing additional restrictions on the operation of the quarry, and thus allowing operation to continue, rather than totally abating it. The operation of the quarry, permitted and regulated by the state, is a lawful business which cannot be a nuisance at law; instead, such a lawful business becomes a nuisance because of the manner in which it is conducted or because of its surroundings or circumstances. *Simpson v. DuPont Powder Co.*, 143 Ga. 465, 466 (85 SE 344) (1915). In such a case, it is proper for the court to enjoin only those parts of the operation which constitute the nuisance rather than the entire enterprise. *Warren Co. v. Dickson*, 185 Ga. 481, 484 (195 SE 568) (1938); *Wilson v. Evans Hotel Co.*, 188 Ga. 498, 500 (4 SE2d 155) (1939). In its order, the trial court identifies specific aspects of the operation which constitute the nuisance and fashions remedies which address those problems without making continued operation impossible. The evidence supports the trial court's findings, and the trial court did not abuse its discretion in issuing a partial injunction. Likewise, Stone Man's argument that the partial injunction was not authorized by proper evidence is without merit.

4. After further sinkhole damage, two of the landowners filed a motion for a second injunction, asking that the court either abate operation of the quarry or enjoin removal of water from the quarry pit. After a hearing, the court denied the motion because the earlier order of the court had already fashioned a remedy for future sinkhole formations. The landowners appeal this decision.

Generally, where an application for injunction is denied, a second application should not be granted unless based upon grounds which were unknown to the applicant at the time of the first application, and which could not, by the exercise of ordinary diligence, have been discovered. [Cits.]

*Cook v. Huckabee Transport Corp.*, 215 Ga. 9, 14 (108 SE2d 710) (1959). In its original order on motion for injunction, the trial court specifically dealt with the prospect of future sinkhole formation because the possibility of the continued formation of sinkholes formed one of the bases on which the landowners sought injunctive relief. The trial court properly denied the application for a second injunction, based as it is upon grounds known to the landowners at the time of the original application and set forth in that application as grounds for relief.

5. Any remaining enumerations of error not disposed of by our holdings in Divs. 1 through 4 are without merit.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED OCTOBER 4, 1993 —
RECONSIDERATIONS DENIED OCTOBER 28, 1993.

*Phears & Moldovan, H. Wayne Phears, Mark Ford, Rebecca L. Laymon, Charles Crawford,* for Stone Man, Inc. et al.
*William M. Akin,* for Green et al.