S95A1279. STONE MAN, INC. v. GREEN et al.
(463 SE2d 1)

CARLEY, Justice.

In a previous nuisance action, appellees (Landowners) sought to have The Stone Man, Inc.'s (Stone Man) quarry closed. Although the jury found the quarry to be a nuisance, the trial court granted Landowners only a partial injunction which allowed Stone Man to continue operation of the quarry with some restrictions. This grant of partial injunctive relief was affirmed on appeal. *Stone Man, Inc. v. Green*, 263 Ga. 470 (435 SE2d 205) (1993) (*Stone Man I*).

Landowners then brought this nuisance action, seeking to recover for damages resulting from Stone Man's subsequent operation of the quarry. According to the allegations of the complaint, Landowners were entitled to recover such damages because the trial court's re-

strictions allowed the quarry to continue operating at substantially the same level as the jury in the previous action had found to be a nuisance. Stone Man answered and moved to dismiss based upon the doctrine of res judicata. The trial court denied the motion, but granted a certificate of immediate review. The Court of Appeals denied Stone Man's application for an interlocutory appeal and we granted Stone Man's petition for certiorari.

Although a plaintiff seeks injunctive relief in an original action and then seeks damages in a subsequent action, the doctrine of res judicata or estoppel by judgment will apply if the issues are identical. *McBride v. Chilivis*, 149 Ga. App. 603, 604-605 (255 SE2d 80) (1979). The issue of whether Stone Man's operation of the quarry constituted a nuisance was raised in Landowners' previous action. In that litigation, Landowners contended that the quarry was a nuisance per se and that its operation should be entirely discontinued. However, the trial court found that the quarry was only a nuisance per accidens and, having so found, it was authorized "to enjoin only those parts of the operation *which constitute[d] the nuisance* rather than the entire enterprise." (Emphasis supplied.) *Stone Man I*, supra at 472 (3). Indeed, the trial court did identify "specific aspects of the operation *which constitute[d] the nuisance* and fashion[ed] remedies which address[ed] those problems without making continued operation impossible." (Emphasis supplied.) *Stone Man I*, supra at 472 (3).

The trial court's ruling affirmed in *Stone Man I* is a final judicial determination that operation of the quarry in accordance with the imposed limitations does *not* constitute an actionable nuisance. Accordingly, Landowners

> are precluded from asserting any claim that, without change in the controlling facts on which the decree rested, and without violation of that decree by the defendant, they may yet make proof of injury and recover damages therefor.

*Guttinger v. Calaveras Cement Co.*, 325 P2d 145, 147 (Cal. App. 1958). Accord *Bodeneck v. Cater's Motor Freight Sys.*, 86 P2d 766, 768-769 (Wash. 1939); *McGrane v. New York El. R. Co.*, 73 NYS 498, 500-501 (1901). Compare *City of Miami v. City of Coral Gables*, 233 S2d 7, 9 (Fla. 1970). Therefore, the trial court erred in denying Stone Man's motion to dismiss Landowners' claim for damages based upon allegations that operation of the quarry in compliance with the restrictions constitutes an actionable nuisance.

However, Landowners would be entitled to recover any damages resulting from Stone Man's violation of the partial injunction or to seek a modification of its terms upon proof of changed circumstances. *Guttinger v. Calaveras Cement Co.*, supra at 147; *DeKalb County v.*

*Bolick*, 249 Ga. 843, 844 (1) (295 SE2d 92) (1982). See *Dunn v. Payne*, 205 Ga. App. 440, 441-442 (1) (422 SE2d 291) (1992). It appears that, after Stone Man filed its application for interlocutory appeal, Landowners amended their complaint to seek these forms of available relief. Therefore, we remand the case to the trial court for consideration of Landowners' amendment to their complaint. See *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 127 (3) (390 SE2d 589) (1990); *Waldrop v. Bettis*, 223 Ga. 715, 717 (2) (157 SE2d 870) (1967).

*Judgment reversed and case remanded. All the Justices concur, except Sears and Hunstein, JJ., who dissent.*

Sears, Justice, dissenting.

As I conclude that the majority has erred in holding that the doctrine of res judicata bars Green's present action, I dissent to the majority opinion.

The majority predicates its res judicata holding on its determination that the trial court's initial injunction was "a final judicial determination that operation of the quarry in accordance with the imposed limitations does *not* constitute an actionable nuisance." Majority opinion at 878. (Emphasis in majority opinion.) I believe, however, that the majority mischaracterizes the trial court's holding. In fact, the trial court itself has made clear that it did not make the determination that the majority attributes to it. At the hearing on Stone Man's motion to dismiss the present action based on res judicata, Stone Man forcefully argued that the trial court's first order conclusively determined that the quarry was not a nuisance if operated within the restrictions. The trial court, however, stated that even though "more than any other case, [it] would like to see this one come to a conclusion," it could not grant the motion to dismiss because the court had attempted to balance the parties' interests with the restrictions imposed in the first order and had *not* made a determination that the quarry could not be a nuisance if operated within those restrictions.

> As much as I would like to see an end to the controversy . . . , I would have to decline [Stone Man's] motion to dismiss . . . . Now, indeed, I did draft a set of regulations . . . under which [Stone Man] would have to operate; but that was an attempt on my part to balance the interest, but it doesn't mean whatever regulations I impose — the operation under those regulations — even though it is pursuant to my regulations doesn't mean it won't be a nuisance under any circumstance. . . . I am in favor of resolving disputes. I love to see cases come to a conclusion. More than any other case,

I would love to see this one come to a conclusion, but I can't grant the motion to dismiss.

The trial court's original judgment contains nothing that contradicts its statements at the hearing on the present action. In sum, although the trial court had discretion to do so, it did not desire to put Stone Man out of business, but recognized that the business damaged the appellees as it was being operated. The trial court thus balanced these interests and chose to let Stone Man continue to operate under certain restrictions.

Such a ruling, as indicated by the trial court, simply is not a *final* ruling that Stone Man's business could *never* be a nuisance when operated under the restrictions. Rather, the restrictions were a practical attempt to determine if Stone Man could operate its business in an inoffensive manner. These types of injunctions have been called a "desirable result" because they permit a trial court to avoid a choice of extremes — the destruction of productive business or the continuation of a damaging nuisance.[1]

> The law of nuisance affords no rigid rule to be applied in all instances. It is elastic. It undertakes to require only that which is fair and reasonable under all the circumstances. In a commonwealth like this, which depends for its material prosperity so largely on the continued growth and enlargement of manufacturing of diverse varieties, "extreme rights" cannot be enforced.[2]

Trial courts have historically granted injunctions that have imposed continuing restrictions on businesses and have thereafter reviewed the effectiveness of those restrictions.[3] Courts have even gone so far as to order a business to periodically report back to the court or to a master to keep the court apprised of the effectiveness of attempts to limit the offensive character of a business.[4]

Moreover, the Restatement, Second, Judgments, notes that actions to modify injunctions that grant or deny continuing relief, like the one in this case, are not barred by res judicata when they are based on a change of condition.[5] A trial court may thus modify a previous injunction by imposing additional burdens on the defendant, "if the original purposes of the injunction are not being fulfilled in any

---

[1] Dobbs, Handbook On the Law of Remedies, p. 360, § 5.7 (1973).
[2] *Stevens v. Rockport Granite Co.*, 104 NE 371, 373 (1914).
[3] See Dobbs at 360-361.
[4] Id.
[5] Restatement, Second, Judgments, § 13, Comment c.

material respect,"[6] whether due to a change in the operative facts[7] or to "a better appreciation of the facts in light of experience."[8]

Common sense dictates that in cases in which a plaintiff alleges that the purpose of a previous injunction is not being fulfilled due to a change of condition, the changed condition will frequently be damage or harm to the plaintiff that was not foreseen at the time of the injunction but which the injunction was designed to prevent. For instance, in *Sizzler Family Steak Houses v. Western Sizzlin Steak House*,[9] the trial court initially enjoined Western Sizzlin from using the "Sizzlin" service mark to identify its services but permitted it to keep the trademark to identify its goods. Subsequently, the trial court modified the injunction to prohibit Western from using the "Sizzlin" trademark and from using its service mark in circumstances that existed at the time of the original injunction but which Sizzler had not discovered at that time. The Eleventh Circuit held that these additional restrictions were proper because the original injunction was insufficient to fulfill its purpose of halting public confusion of the "Sizzler" and "Sizzlin" marks.[10]

Just as the original injunction in *Sizzler* was not a final determination that there was no longer a danger of public confusion of the "Sizzler" and "Sizzlin" marks, the original injunction in this case was not a final determination that the operation of the quarry within the restrictions could never be a nuisance. Further, the change in operative facts in *Sizzler*, as in this case, was harm to the plaintiffs that the parties and the court had not foreseen at the time of the initial injunction. Moreover, the purpose of the original injunction in this case was to alleviate the damage caused to Green's property by operation of the quarry. By alleging that damage to his property has continued since the original injunction, Green is now alleging, just like the plaintiff did in *Sizzler*, that the original injunction was insufficient to fulfill its purpose. Clearly, if Green's allegations of continued damage are correct, the purpose of the injunction would be unfulfilled. Thus, under the foregoing principles, the original injunction would not be res judicata as to a claim by Green to increase the original restrictions imposed on Stone Man.[11] Moreover, although Green is now seeking

---

[6] Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2961 at 397 (citing *United States v. United Shoe Machinery Corp.*, 391 U. S. 244, 252 (88 SC 1496, 20 LE2d 562) (1968)).

[7] Id. at 402-403.

[8] Id. at 404.

[9] 793 F2d 1529 (11th Cir. 1986).

[10] Id. at 1539-1540.

[11] My conclusion that the original injunction in this case is subject to modification is not inconsistent with this Court's decision in *Cobb County v. Buchanan*, 261 Ga. 857 (413 SE2d 198) (1992). In that case, this Court held that the trial court did not have authority to modify a permanent injunction outside of the term in which it was entered. The injunction in

damages instead of a modification of the injunction, the res judicata effect of the initial continuing injunction remains constant. In other words, if the original injunction is not res judicata as to a modification action to alleviate the continued damage, then it should not be a bar to an action for damages if Green elects not to pursue injunctive relief.

The majority opinion, in fact, implicitly recognizes that the continued damage to Green's property is a condition that permits Green's present action. In this regard, the majority, at 878, holds that Green may "seek a modification of [the injunction's] terms upon proof of changed circumstances." The only proof of changed circumstances, however, that would justify a modification of the original injunction is the continued damage alleged by Green. The reason is that the only ground for the original injunction was that the operation of the quarry constituted a nuisance; thus, any modification of the injunction must be predicated upon a finding that the quarry remains a nuisance when operated within the restrictions, for if the quarry is not a nuisance when operated within the restrictions, no modification of the injunction is warranted. In the same vein, by the phrase "changed circumstances," the majority cannot be referring to violations of the restrictions by Stone Man. Such violations would not indicate that the injunction needed any modification, but would indicate only that Stone Man is in contempt of the injunction. Further, because the only reason for a modification action is that the operation of the quarry within the restrictions continues to be a nuisance, the majority's holding that Green may seek a modification action contradicts its holding that the initial injunction was a final determination that operation of the quarry within the restrictions does not constitute a nuisance.

Finally, as a matter of policy, it is undesirable to accord res judicata effect to injunctions like that issued by the trial court in this case. A trial court that is faced with a productive business, such as a quarry, that is damaging neighboring landowners must draft an injunction in light of what it believes will be the future course of events. Given the complex dynamics of the interaction of a quarry with its surrounding environment, determining the future impact of the quarry on its environment is an imprecise undertaking. If, as is likely the case, a trial court is uncertain whether an injunction that permits the business to continue to operate will alleviate the damage to the neighboring landowners, and if the court knows that such an injunction will be given res judicata effect if the restrictions on the business

---

*Buchanan,* however, was not one granting or denying continuing relief, like the injunction in this case, but one which ordered the immediate removal of a structure.

fail to alleviate the damage, the court may instead issue an injunction closing the business. We should not discourage trial courts from seeking practical, economic solutions to today's difficult problems, based on the costs and benefits to all who would be affected. The majority opinion certainly diminishes the usefulness of a partial injunction like that utilized by the trial court in this case.[12] Id. at 472 (3).

For the foregoing reasons, I dissent to the majority opinion. I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED OCTOBER 23, 1995 —
RECONSIDERATION DENIED NOVEMBER 20, 1995.

*Phears & Moldovan, H. Wayne Phears, Albert L. Norton, Jr.,* for appellant.
*William M. Akin,* for appellees.

---

[12] Our holding in *Stone Man*, 263 Ga. 470, 472 (435 SE2d 205) (1993), is consistent with this dissent. In that case, we held that the trial court "enjoin[ed] those aspects of the operation which constitute[d] the nuisance and fashion[ed] remedies which address[ed] those problems without making continued operation impossible." Enjoining certain aspects of a business that a trial court finds to be a nuisance is not the same as a final judgment ruling that the operation of the business under those restrictions can never be a nuisance.