Gregory W. **WELCH**, as the surviving spouse of Mary Kathleen Welch, and as administrator of the estate of Mary Kathleen Welch, Plaintiff,

v.

**GENERAL MOTORS CORPORATION**, Defendant.

Civil Action No. 1:94–cv–2791–HTW.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 12, 1996.

David H. Flint, Alexander Jackson Simmons, Jr., Schreeder Wheeler & Flint, Atlanta, GA, for plaintiff.

Gordon Allen Smith, Priscilla N. Carroll, King & Spalding, Atlanta, GA, for defendant.

*ORDER OF COURT*

HORACE T. WARD, Senior District Judge.

This matter currently is pending before this court on plaintiff's motion for partial summary judgment. Defendant moves this court for summary judgment as to plaintiff's breach of express and implied warranty claims, defective/negligent manufacture claim, and claim for punitive damages. Plaintiff opposes defendant's motion only on the punitive damages issue and concedes that summary judgment is appropriate as to the other issues.

*FACTS*

On April 1, 1993, plaintiff's decedent, Mary Kathleen Welch, was driving a 1991 Buick LeSabre automobile on Interstate 85 South in Atlanta, Georgia. She exited the interstate at the Lindbergh Drive exit. At the bottom of the exit ramp, she collided with a 1989 Crown Victoria driven by Mr. Dan Waits. As a result of injuries suffered in this collision, Mrs. Welch died. Plaintiff's experts have no opinions about or evidence of manufacturing defects in the brake system of the subject LeSabre. Plaintiff did not own or lease the subject car at the time of his wife's accident. Plaintiff did not have any contractual relationship with defendant at the time of the car crash.

In the owner's manual, defendant provided a warning to drivers of the LeSabre in the event that they drove the car with the parking brake engaged, though the parties dispute the adequacy of the warning. The warning states that driving with the parking brake on can cause the rear brakes to overheat which could result in requiring that the brakes be replaced and could cause damage to other parts of the vehicle. The car at issue also contained a red light on the instrument panel that said "BRAKE" in black letters; this light illuminated when the parking brake was engaged.

*DISCUSSION*

Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir.1986); *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d

1294, 1296 (11th Cir.1983); Fed.R.Civ.P. 56(c). To determine if the moving party meets its burden of proof, the court must view all evidence and inferences to be drawn from it in a light most favorable to the party opposing the motion. *Carlin Communication*, 802 F.2d at 1356; *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).

The Supreme Court has addressed the burdens of proof which each party must carry on a motion for summary judgment and stated that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quotation omitted).

The nonmoving party is required to identify specific facts which demonstrate that there is a genuine issue for trial and may not rest on the allegations or denials in its pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, in order to survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his or her favor. If he or she does so, there is a genuine issue of fact that requires a trial. *Id.* at 257, 106 S.Ct. at 2514.

OCGA § 51–12–5.1(b) provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." According to the Georgia Supreme Court,

> "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. There is general agreement that, because it lacks this element, mere negligence is not enough, even though it is so extreme in degree as to be characterized as 'gross'.... Still less, of course, can such damages be charged against one who acts under an innocent mistake in engaging in conduct that nevertheless constitutes a tort...."

*Banks v. ICI Americas, Inc.*, 266 Ga. 607, 610, 469 S.E.2d 171 (1996) (citing *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 121–122(4), 365 S.E.2d 827 (1988)). Similarly, the Georgia Court of Appeals has stated as follows:

> In *Stone Man v. Green*, 263 Ga. 470, 472, 435 S.E.2d 205 (1993), the Supreme Court held that "punitive damages, the purpose of which is to 'punish, penalize or deter,' are, as a general rule, improper where a defendant has adhered to environmental and safety regulations," because such compliance tends to demonstrate the absence of wilful misconduct, malice, fraud, etc., necessary to assess punitive damages.

*General Motors Corp. v. Moseley*, 213 Ga. App. 875, 885, 447 S.E.2d 302 (1994). However, *Moseley* noted that "nothing in *Stone Man* precludes an award of punitive damages where, notwithstanding the compliance with applicable safety regulations, there is other evidence showing culpable behavior." *Id.*

Defendant's first argument is that plaintiff's punitive damages claim is barred because (1) the 1991 Buick LeSabre's brake system and instrument panel met the relevant applicable Federal Motor Vehicle Safety Standard ("FMVSS") requirements, and (2) defendant provided drivers of the car with a warning to alert them when the car's parking brake was applied. This warning was in the

form of a red light on the instrument panel with "BRAKE" spelled out in black letters.

Plaintiff contends that, prior to the accident at issue in 1993, defendant was aware of reports of brake failure in a small percentage of cars in the LeSabre's class when the car was driven with the parking brake engaged. Plaintiff also argues that defendant took no steps to warn drivers of its cars that such brake failure could occur. In addition, plaintiff has introduced testimony that the "BRAKE" light was not adequately visible to the driver if the driver's hands were in certain positions on the steering wheel. Moreover, plaintiff argues that defendant knew (1) that the brake lamp violated federal regulations, (2) that a chime could be retrofitted to the automobile, and (3) that its own personnel were requesting corrective action.

Defendant responds that plaintiff's position stems from an analysis of certain 1991–92 model year "C" and "H" cars manufactured by defendant—not the 1991 Buick LeSabre at issue, or 1991 Buick LeSabres in general. Defendant's position is that plaintiff's alleged factual inaccuracies result from plaintiff's failure to depose relevant witnesses. The court agrees with defendant that unrefuted evidence indicates that its Product Problem Evaluation Committee ("PPEC") did not conduct an investigation concerning the "BRAKE" warning light or instrument panel in plaintiff's car. The Buick car subject to this investigation was the Buick Park Avenue. While some 1992 LeSabres became involved in the PPEC investigation because of its "UB3 cluster" instrument panel, defendant notes that the 1991 LeSabre—the car at issue—did not possess this type of instrument panel.

Defendant contends that its compliance with applicable federal regulations, and lack of other "culpable behavior" as described in *Moseley*, mandates a finding that punitive damages are not appropriate as a matter of law. Plaintiff disputes the alleged regulatory compliance; plaintiff also attempts to show culpable behavior analogous to that in *Moseley*. The court agrees with defendant that plaintiff has failed to raise a material issue of fact as to the availability of punitive damages under OCGA § 51–12–5.1(b). While a jury

may find defendant negligent, or perhaps even grossly negligent, such a finding would not support a claim for punitive damages. *Bartja v. National Union Fire Ins. Co. of Pittsburgh, PA,* 218 Ga.App. 815, 818, 463 S.E.2d 358 (1995) ("clear and convincing evidence of a defendant's 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences' is required to warrant the imposition of punitive damages.") (citing *Colonial Pipeline Co. v. Brown,* 258 Ga. 115, 118, 365 S.E.2d 827 (1988)).

The record indicates that defendant complied with the applicable federal regulations—namely, FMVSS 101 and 105. Plaintiff argues that there is an issue of fact as to whether the "BRAKE" light on the car's instrument panel was "visible" and "in clear view"—as required by 49 C.F.R. § 571.101 S5.3.4(a). There is evidence that defendant referred to the brake warning light on some vehicles as having "non-obvious visibility." Plaintiff's expert also alluded to instances where a driver's hands on the steering wheel in certain positions could block the driver's view of certain warning lights, such as the "BRAKE" light.

However, the court notes defendant's references in their internal memoranda that cars at issue complied with the FMVSS. Moreover, the affidavits of Edwin E. Conner and Bruce R. Bowman evidence compliance with applicable regulations. Nor have any regulatory agencies taken any action against defendant regarding the brake system or instrument panel at issue. And even assuming *arguendo* that an issue of fact existed as to compliance with federal regulations, this would not necessarily create an issue of fact on the issue of punitive damages—especially where, as here, defendant believed it was complying with these regulations.

Further, there is no evidence that defendant believed that the 1991 Buick LeSabre contained a negligent or dangerous brake system. The internal memoranda—and the PPEC investigation—relate primarily to "C" cars or 1992 "H" cars. The car at issue was a 1991 "H" car. Based on the evidence before the court, it appears that the docu-

mentation in the record relating to brake problems in the Buick "H" car is, at best, *de minimis* or statistically negligible.[1] The court also finds the facts of *Moseley*—namely, the automobile company's awareness of exploding fuel tanks on its full-size pick-up trucks and "knowing endangerment of all who may come in contact" with one of these trucks—distinguishable from those of the instant case. Here, under plaintiff's theory, defendant's alleged negligence could lead to an accident only (1) if a driver erroneously began driving with the parking brake engaged, and (2) did not realize that the brake was engaged and continued driving for some distance. In short, the instant case is not a *Moseley*-type case. Thus, defendant is entitled to summary judgment on plaintiff's punitive damages claim.

### CONCLUSION

Therefore, after due consideration, the court GRANTS defendant's motion for partial summary judgment as to plaintiff's breach of express and implied warranty claims, defective/negligent manufacture claim, and claim for punitive damages.

SO ORDERED.[2]

---

1. Of the numerous pages of deposition exhibits cited by plaintiff, the court located only one (1) reference to a 1991 Buick "H" vehicle—in a March 9, 1992 document listed as Exhibit 10 to the deposition of William Kitzes. In contrast, Exhibits 7, 8, 9, and 11 address other vehicles.

2. As a courtesy to the clerk of court, this court advises the clerk that this Order terminates entry no. 69 on the docket sheet.