A97A2328, A97A2329. BARGER v. GARDEN WAY, INC.;
and vice versa.
(499 SE2d 737)

MCMURRAY, Presiding Judge.

Plaintiff John H. Barger brought this product liability action against defendant Garden Way, Inc. ("Garden Way") d/b/a Troy-Bilt Manufacturing Company, seeking to recover for personal injuries sustained when his hand was allegedly sucked into the discharge chute while the chipper/shredder was running, as plaintiff bent over to brush away a stray or loose bit of vine extending from the discharge chute.

Plaintiff purchased a Troy-Bilt Tomahawk chipper/shredder for personal use in his garden. On April 3, 1992, plaintiff "read his owner/operator manual, in preparation for use of the chipper/shredder. . . . In addition to his careful review of the . . . manual, [plaintiff] prepared . . . by sharpening [the] blade, by obtaining an additional discharge screen, by installing a new belt, and by wearing protective eyewear. . . . The owner/operator manual specifies that wet, soggy, or green materials may be shredded in the chipper/shredder." The manual directs the operator to "remove the discharge screen from the chipper/shredder before shredding wet or green materials such as wet, matted leaves, gone-by vegetables, green vegetation like squash vines, etc."

On April 4, 1992, plaintiff had wet or green garden materials to shred. He "removed the discharge screen from the chipper/shredder before feeding the wet or green materials into the chipper/shredder, in accordance with the instructions of the . . . manual. . . .

[D]espite following all of the safety instructions . . . , [plaintiff's] hand was pulled into the discharge chute of the chipper/shredder when he attempted to remove a vine from outside the discharge chute." Plaintiff sustained "serious permanent injury to his hand and arm, including dismemberment and permanent loss of use of what remained of his hand."

The theories of recovery included strict liability for defective design, strict liability for failure to warn, negligent design, and negligent failure to warn. The complaint further demanded punitive damages, as well as the expenses of litigation for Garden Way's alleged stubborn litigiousness. The case was tried to a jury which returned a verdict for defendant on all theories of liability. This appeal followed. *Held*:

## Case No. A97A2328

1. Before trial, plaintiff moved to require defendant to produce "statements in Garden Way's possession by other persons injured by the product at issue in this case; and [further, to] allow disclosure of relevant information by persons otherwise prohibited from making disclosures [allegedly] due to the existence of confidentiality orders or agreements." Garden Way opposed such disclosure of testimony by witnesses who had entered into confidentiality agreements, on the ground that the trial court "cannot order Garden Way to give up its legal rights [as] bargained for and memorialized in Confidential settlement Orders/Agreements entered in[to] in other cases. To the extent Plaintiff seeks the deposition of any 'other persons' who have executed Confidential settlement Orders/Agreements with Garden Way, Garden Way will not voluntarily waive any of its rights under any such Orders/Agreements." We are not shown the location, in a record of over 3,670 pages and a transcript of over 3,500 pages, of the precise language of the Confidential settlement Orders/Agreements as relied on by defendant to preclude discovery of witnesses with relevant knowledge of allegedly similar accidents or injuries.

The trial court denied the motion, concluding it had no authority "which would allow th[e] Court to require Defendant to consent to a breach of confidentiality agreements or the confidentiality orders of other courts." The denial of this motion, in the nature of a motion to compel discovery, is plaintiff's first enumeration of error.

(a) OCGA § 13-3-45 provides: "If the consideration [for a contract] is good in part and void in part, the promise will or will not be sustained, depending upon whether it is entire or severable. If the consideration is illegal in whole or in part, the whole promise fails." " 'An illegal consideration consists of any act or forbearance, or a promise to act or forbear, which is contrary to law or public policy.'

'It is a general rule that agreements against public policy are illegal and void.'" (Citations omitted.) *Hanley v. Savannah Bank &c. Co.*, 208 Ga. 585, 586 (68 SE2d 581). Moreover, "[i]f the consideration upon which a contract is based was given as a result of a mutual mistake of fact or of law, the contract cannot be enforced." OCGA § 13-5-4.

(b) The public policy of Georgia applicable to this case is stated generally in OCGA § 24-1-2: "The object of all legal investigation is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence." More specifically, the applicable public policy of Georgia is established by OCGA § 9-11-26 (b) (1): "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." See, e.g., *Dynin v. Hall*, 207 Ga. App. 337, 338 (1) (428 SE2d 89).

(c) In a document memorializing an oral settlement agreement, a "provision that the agreement would be confidential unless disclosed as required by subpoena, [court] order, or law . . ." was found to be valid consideration entitling the parties to enforce that agreement. *Mitchell v. Lucas*, 210 Ga. App. 821, 822 (437 SE2d 792). Like the trial court, we are not aware of any binding precedent holding that a confidential settlement agreement without such a provision is illegal as against public policy. But we agree with the U. S. District Court for the Southern District of Georgia that a court order purporting to prohibit a witness from testifying in response to a subpoena, subsequent court order, or notice of deposition does violate the public policy of Georgia. See *Williams v. Gen. Motors Corp.*, 147 FRD 270, 272 [3-5] (S.D. Ga. 1993) ("Michigan [court] order [incorporating settlement], by facially prohibiting [expert witness] from testifying as to matters outside the scope of any privilege [recognized in Georgia], violates Georgia public policy [and therefore] the Full Faith and Credit Clause does not require [the U. S. District Court for the Southern District of Georgia] to give full effect to the Michigan court order," applying *Nevada v. Hall*, 440 U. S. 410, 421 (99 SC 1182, 59 LE2d 416)). The public policy of Georgia does not "permit parties to contract privately for the confidentiality of documents [or testimony], and [thereby] foreclose others from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position. To hold otherwise would clearly not serve the truth-seeking function of discovery in [civil] litigation." *Grumman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 FRD 84, 87-88 [1] (E.D. N.Y. 1981).

(d) In our view, a provision that a party to a confidential settlement agreement may nevertheless testify or otherwise comply with a subpoena, court order, or applicable law is an implicit term in such a

confidential settlement agreement. "An implicit contractual provision exists where such provision is necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they apparently deemed it unnecessary to state it. See *Ellis v. Brookwood Park Venture*, 161 Ga. App. 242, 243 (288 SE2d 308)." *Herring v. Dunning*, 213 Ga. App. 695, 698 (446 SE2d 199). Such an interpretation gives full effect to the legitimate purposes of any confidential settlement agreement without running afoul of the public policies of Georgia. In the case sub judice, the trial court erred in concluding that a confidential settlement agreement, even if incorporated as another court's final order, can operate to preclude discovery by Georgia litigants of the parties to that confidential settlement agreement.

2. Where a judgment or ruling is based on an erroneous theory of law, or upon a misapprehension of the applicable law, reversal is required. *All Phase Elec. Supply Co. v. Foster & Cooper, Inc.*, 193 Ga. App. 232, 233 (2), 234 (387 SE2d 429). In the case sub judice, the trial court's erroneous ruling on a discovery matter cannot be deemed harmless in this instance. Consequently, we must reverse and remand for additional discovery consistent with this opinion. Upon a subsequent showing that newly discovered evidence is relevant, admissible, and likely to affect the outcome, a new trial is required.

3. Plaintiff's remaining enumerations have been considered and are found to have been rendered moot.

### Case No. A97A2329

4. In the cross-appeal, defendant first enumerates the denial of its motion for directed verdict as to each of plaintiff's claims, arguing that plaintiff assumed the risk of an open and obvious hazard, and that plaintiff deliberately misused the chipper/shredder by operating the machine when it was partially disassembled.

Defendant's responses to interrogatories stated in part: "The discharge tunnel was designed so that the machine could run without a screen or bar grate in place, and thereby reducing the clogging caused by the screen or grate. Different variations of the tunnel were considered, but all were essentially the same configuration as the present tunnel." Plaintiff testified that, after he had finished mulching wet and green vegetation with the discharge screen removed (as directed by the owner's manual), he intended to "run all the gasoline out of the machine before [he] put it away for the next time." Standing next to the machine, plaintiff "noticed this branch here, this vine sticking out. . . . When [plaintiff] reached down to take it off, it went [up into the discharge chute] like that, and what stopped [plaintiff], [his] hand going in there further was . . . the chute caught [his]

sleeve. . . . You can't explain how fast. It was just 'boom,' (indicating)."

Plaintiff did not slip or fall into the machine. Nor did he intentionally "stick [his] hand up inside the discharge chute." In brushing away this bit of vine, plaintiff "wasn't planning to take and put [his] hand [into the discharge chute] or having [his] hand jerked up in there." Plaintiff agreed that decals on the machine warned users not to "put your hand *up in there.*" (Emphasis supplied.) But despite having examined these warnings plus those contained in the owner's manual, plaintiff did not feel he had been warned of the possibility that his "hand will be pulled in . . ." the discharge chute. "Nothing was mentioned about pull-in whatsoever in the instructions [plaintiff] read." Similarly, the manual makes no "mention about putting [a] rod and pin back in [the service door]," prior to resuming operation.

Based on the evidence recited above, a verdict for defendant was authorized but was not demanded. There is no evidence that plaintiff knowingly tempted fate by *intentionally* placing his hand *into* the discharge chute, as would evince his assumption of a known risk. A party's failure to exercise ordinary care to discover the danger is not properly a matter of assumption of the risk, but of the defense of contributory negligence. *Beringause v. Fogleman Truck Lines*, 200 Ga. App. 822, 823 (4), 824 (409 SE2d 524). Contributory negligence is not a defense to a claim of strict liability for product-caused harm. *Deere & Co. v. Brooks*, 250 Ga. 517, 518 (1) (299 SE2d 704). See also *Continental Research Corp. v. Reeves*, 204 Ga. App. 120, 128 (4) (b) (419 SE2d 48) (physical precedent). The trial court did not err in denying defendant's motion for directed verdict. OCGA § 9-11-50 (a).

5. Defendant's second and third enumerations of error complain of the denial of motions for directed verdicts as to plaintiff's claims for punitive damages and expenses of litigation. In light of the possibility of new evidence indicating defendant knew of prior instances whereby a user's hand was pulled into the discharge chute, these enumerations are not ripe for appellate consideration. *Brown v. Tomlinson*, 246 Ga. 513, 515 (272 SE2d 258).

6. The fourth enumeration contends the trial court erred in refusing to give defendant's requested jury instruction 18 "on the avoidance doctrine in strict liability." Defendant argues the avoidance doctrine can be a defense to strict liability claims where misuse of a partially assembled machine is the sole proximate cause of the injury. The charge requested stated that a plaintiff cannot recover if by ordinary care he could have avoided the consequences to himself of any defect in the chipper/shredder in question.

" '[C]ontributory negligence is not a defense to a claim of strict liability for product-caused harm. Under this rule, it is held that

strict liability recovery is not barred by evidence of nothing more than that the injured person failed to discover a defect in the product which injured him. Similarly, contributory negligence consisting of a careless act by the injured person with respect to the product is no defense, where the actual cause of the injury arises from an unanticipated defect in the product itself, and not from the careless act of the plaintiff." *Deere & Co. v. Brooks*, 250 Ga. 517, 518 (1), supra. In the case sub judice, the trial court did not err in failing to instruct the jury on this inapplicable theory of defense to a strict product liability claim.

7. Defendant's fifth and sixth enumerations complain of the charge on the subject of defendant's compliance with industry standards. The charge as given stated first: "While you may consider a manufacturer's proof of compliance with industry-wide practices or state of the art, compliance with these does not eliminate conclusively its liability for its design of defective products." The trial court subsequently charged: "Compliance with applicable industry standards will not preclude an award of *punitive* damages if you find by clear and convincing evidence that the manufacturer engaged in a deliberate course of conduct which knowingly endangered those using the product." (Emphasis supplied.) Defendant argues this charge states only an exception to the general rule of non-liability for punitive damages, as proposed in its Request to Charge No. 81, which stated in part: "Generally, if you find that Garden Way's chipper/shredder complied with the applicable industry standard, then you should not award punitive damages."

"[A] manufacturer's proof of compliance with industry-wide practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products. [Cits.]" *Banks v. ICI Americas*, 264 Ga. 732, 733 (1), 736, n. 6, 737 (450 SE2d 671). But "punitive damages, the purpose of which is to 'punish, penalize or deter,' are, as a general rule, improper where a defendant has adhered to [applicable] environmental and safety regulations." *Stone Man, Inc. v. Green*, 263 Ga. 470, 471 (1), 472 (435 SE2d 205). This is because "such compliance does tend to show that there is no clear and convincing evidence of 'willful misconduct, malice, fraud, oppression, or that entire want of care which would raise the presumption of [a] conscious indifference to [the] consequences.' [Cit.]" Id. at 472 (1).

In the case sub judice, the charge as given is a correct statement of the law and correctly notes the important distinction between tort liability for *compensatory* damages for defective design *despite* compliance with industry standards, and the general rule of *non*-liability for *punitive* damages. Since the legitimate substance of defendant's requests was thoroughly and accurately stated, we find no error in

the charge. *Ploof Truck Lines v. Bennett*, 221 Ga. App. 789, 790 (2) (472 SE2d 552).

8. The seventh enumeration complains of the failure of the trial court to give requested jury instructions on "impulse," as in: "If you find that Plaintiff acted on impulse when brushing the vine away from the discharge area and would have been injured even if the warning suggested by Plaintiff had been given, you must find for Defendant on Plaintiff's failure to warn claim."

In our view, the substance of this request was adequately covered by the trial court's instruction: "If you find that Plaintiff knowingly and willfully took a risk which was so obvious that the act of taking the risk in and of itself amounted to a failure to exercise ordinary care for his safety, then the Plaintiff would not be entitled to recover under the strict products liability theory." A similar instruction on the failure to exercise ordinary care for one's own safety was given regarding the negligence theory of liability. Regardless of whether plaintiff placed his hand near the discharge chute knowingly or without conscious thought, the danger to consumer users is foreseeable, as confirmed by the existing warnings. The trial court did not err in refusing to give the requested instruction.

9. The trial court admitted the videotaped deposition of Charles Duran, Jr., who testified that his hand was pulled into a chipper/shredder under similar circumstances when he was attempting to shred bamboo. "What would happen, it would bog the machine down. It wouldn't come out and it would stop the machine. We had to remove it and then go back and start the machine again, and at the time that I got my hand on this thing was when I thought that the machine was off because it had stopped, okay, to that point, and it sounded like it sounded all the other times it had stopped. I put my hand down to get this thing to pull it out and it grabbed me and pulled my hand back in rather than out." This evidentiary ruling is enumerated as error.

"In product liability actions, evidence of other incidents involving the product is admissible, and relevant to the issues of notice of a defect and punitive damages, provided there is a showing of substantial similarity. *Mack Trucks v. Conkle*, 263 Ga. 539 (436 SE2d 635) (1993). 'Without a showing of substantial similarity, the evidence is irrelevant as a matter of law [and there is nothing upon which the court's discretion can operate].' *Carlton Co. v. Poss*, 124 Ga. App. 154, 155 (183 SE2d 231) (1971)." *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 877 (1) (447 SE2d 302).

In the case sub judice, evidence that Charles Duran, Jr.'s hand was suddenly and unexpectedly drawn *into* the discharge chute was substantially similar to the circumstances as testified to by plaintiff. The trial court did not err in admitting this evidence over defendant's

relevancy objection. *Mack Trucks v. Conkle*, 263 Ga. 539, 544 (3), supra.

*Judgment affirmed in Case No. A97A2329. Judgment reversed in Case No. A97A2328 and case remanded with direction. Beasley and Smith, JJ., concur in Divisions 1, 2, 4, 5, 6, 7, 8, 9, and in the judgments.*

DECIDED MARCH 13, 1998 —
RECONSIDERATION DENIED MARCH 31, 1998

*Phears & Moldovan, H. Wayne Phears, Richard E. Harris*, for appellant.

*Drew, Eckl & Farnham, W. Wray Eckl, Peter H. Schmidt II*, for appellee.