**FIFTH DIVISION
MCFADDEN, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**July 2, 2025**

# In the Court of Appeals of Georgia

A25A0571. MCMILLAN v. RODRIGUEZ et al.

PIPKIN, Judge.

In this case involving an agreement between a millionaire seeking an elaborate doomsday bunker and an unlicensed contractor ready to complete the work in mere weeks, Appellant Joshua McMillan challenges the trial court's application of OCGA § 43-41-17 (b)[1] to grant summary judgment to Appellees Andrew Rodriguez, Angelica

---

[1] "As a matter of public policy, any contract entered into on or after July 1, 2008, for the performance of work for which a residential contractor or general contractor license is required by this chapter and not otherwise exempted under this chapter and which is between an owner and a contractor who does not have a valid and current license required for such work in accordance with this chapter shall be unenforceable in law or in equity by the unlicensed contractor." This provision, as well as others included in Chapter 41 of Title 43, were amended effective July 1, 2024; all such references, cites, and quotes in this opinion are from the version of the statutes in effect at the time of the agreements giving rise to this action.

Rodriguez, and AAR Ventures, LLC. As discussed below, we conclude that McMillan has failed to demonstrate reversible error; consequently, we affirm

Generally speaking, the relevant facts and procedural history underlying this matter are undisputed, and only questions of law are presented for us to consider on appeal; nevertheless, we are mindful of the appropriate standard governing the appeal of the grant of summary judgment.[2] See *Baja Properties v. Mattera*, 345 Ga. App. 101, 102 (1) (812 SE2d 358) (2018).[3]

When construed appropriately, the record evidence shows that, in October 2023, Andrew Rodriguez ("Rodriguez") -- a self-described multi-millionaire -- believed "that a mass casualty event was imminent and that [a foreign government] was going to cause the release of fentanyl through an airborne distribution system across the United States." Consequently, in mid-October 2023, Rodriguez reached out to McMillan to construct a "large-scale bunker" on a parcel of commercial property that he owned through his company, AAR Ventures, in Dallas, Georgia.

---

[2] Most, if not all, of the facts included in this opinion are found in McMillan's affidavit, statement of material facts, or his own filings.

[3] Our de novo review of the record renders moot McMillan's claim that the trial court misinterpreted, misapprehended, and misapplied various facts in the record.

Rodriguez told McMillan that he was prepared to spend over one-million dollars on the project and that, to adequately protect himself and his family, it needed to be completed in a matter of weeks. Undeterred by the fact that neither McMillan nor his company, Hancock Diversified, LLC, held a contractor license,[4] Rodriguez reached an oral agreement with McMillan for the completion of the bunker; Rodriguez wired McMillan a total of $270,000 for the project, but this amount proved insufficient to fund the project to completion.

Apparently lacking the liquidity to self-finance the completion of the project -- and unable to secure a traditional bank loan -- Rodriguez agreed that McMillan

> would loan money in the form of advancements to fund the Bunker Project on the following basic terms: (1) [The Rodriguezes] would sign a promissory note to be due within 45 days and payable to McMillan in the amount of $1,500,000.00 which [the parties] agreed would be an amount sufficient to cover the total amount of monies McMillan would need to advance to completely fund the Bunker Project; (2) AAR Ventures, LLC would provide a corporate Guaranty for the Promissory Note; and (3) AAR Ventures, LLC would provide security for the

---

[4] While Hancock Diversified is a named defendant and, apparently, was subject to the trial court's grant of summary judgment, the company is not seeking review of the decision and is not a party to this appeal.

Promissory Note by granting McMillan a second priority deed to secure debt against the [p]roperty [on which the bunker was being constructed].

Shortly thereafter, the relevant documents -- a promissory note, guaranty, and security deed -- were drawn up by an attorney and executed by the relevant parties. McMillan has explained that, pursuant to these agreements, he "loaned monies in the form of advancements to fund the Bunker Project in the amount of over half a million dollars, which paid for labor, services, and materials on the project."

In late October 2023, with the bunker "substantially complete," work was halted by the City of Dallas; unbeknownst to McMillan, there was a pre-existing "stop work" order on the property dating from February 2022 and no permits had been issued for the bunker construction. There is little dispute that the bunker was not, in fact, completed, and the record evidence suggests that subsequent inspections of the construction revealed numerous code and building violations. On November 1, 2023, Hancock Diversified sent AAR Ventures an invoice "for the building of a non-permitted bunker" seeking payment in the amount of $1,143,171.62.

After the Rodriguezes refused to pay on the promissory note and AAR Ventures failed to make any payments under the guaranty, McMillan sent a demand letter for

payment in full -- for an amount then totaling approximately $1,158,048.24 -- and threatened to foreclose on the subject property. In response, Appellees filed suit against McMillan, seeking, as relevant to this appeal, declaratory and injunctive relief. Appellees asserted that the construction agreement was void because it was not in writing and that, in any event, the agreements were all unenforceable in accordance with OCGA § 43-47-17 (b) because McMillan was not a licensed contractor. McMillan answered -- asserting various defenses and denying the material allegations in the complaint -- and counterclaimed, asserting that he was entitled to recover under both the promissory note signed by the Rodriguezes and the guaranty executed by AAR Ventures.

Following discovery the parties subsequently filed competing motions for summary judgment. In their motion for partial summary judgment, Appellees asserted that they were entitled to a declaration that McMillan was "statutorily barred from enforcing any payment provision under the [p]arties' construction contract, and by failure of consideration and liberal construction of the applicable licensure statute, the promissory note, deed to secure debt, and personal guarantees at issue are void as a matter of law." Relying on OCGA § 43-41-17 (b), Appellees asserted that McMillan

5

could only enforce the contracts if he was appropriately licensed, that McMillan was not appropriately licensed for the job, and, consequently, McMillan could not "enforce the construction contract or the underlying note, guarantees, and DSD [deed to secure debt]."

Under McMillan's theory of the case -- as articulated both in his own motion for summary judgment and in oral argument before the trial court -- OCGA § 43-41-17 (b) is inapplicable to the written promissory note or guaranty. According to McMillan, there are multiple agreements to consider, the first of which was the oral contract for the construction of the bunker between Rodriguez and Hancock Diversified. McMillan acknowledged that this original agreement was "unenforceable" because he was not a licensed contractor; nevertheless, he asserted that OCGA § 43-41-17 (b) does not affect "the rights of other parties under *different* contracts." (Emphasis supplied.) And, according to McMillan, the promissory note, guaranty, and security deeds are all *different* contracts, executed at *different* times, and include *different* parties. The object of these agreements -- which McMillan characterized as "independent contracts [apart] from the construction agreement" -- was "to evidence, and secure, McMillan's loan to advance funds to pay for labor and materials

6

on the Bunker Project." McMillan posited that there was nothing "illegal or otherwise against public policy of this [S]tate for someone to loan money in the form of advancements to fund a construction project" and that "[c]onstruction activity as the object of the contract is not itself an illegal activity. It is only when the work is performed by an unlicensed contractor that the contract becomes illegal." McMillan also asserted that neither the written promissory note nor the guaranty could "be considered a contrivance to secure payment of an illegal contract to circumvent the licensing statute" because, he said, the written "[n]ote did not exist nor was it even contemplated when the construction work began."

Following a hearing, the trial court granted Appellees' motion for partial summary judgment and denied McMillan's motion for summary judgment. The trial court concluded that the undisputed evidence established that neither McMillan nor Hancock Diversified "are, were, or apparently ever have been licensed contractors in this [S]tate as required by Georgia law" and that McMillan "personally negotiated with [Appellees] for this construction project and . . . was acting as a general contractor on this work." Thus, the trial court concluded, McMillan was precluded by OCGA § 43-41-17 (b) from suing to recover the debt or from attempting "to

foreclose on the security deed, which is directly and solely related to that void debt."
McMillan now challenges this decision on appeal.

1. McMillan first argues on appeal, as he did below, that OCGA § 43-41-17 (b) is not a bar to his recovery because, he says, that provision "only applies to render unenforceable contracts for the performance of construction work for which a contractor license is required." Specifically, McMillan claims that "[t]he promissory note and guaranty were *not* for the performance of work." Instead, McMillan says that the "object" of the "debt instruments" -- the promissory note, guaranty, and security deed -- was "to evidence, and secure, McMillan's loan to advance funds for the Bunker Project." According to McMillan, "there is nothing illegal or against public policy of the [S]tate for McMillan to loan money in the form of advancements to fund a construction project," and he is not "required to hold any state license to lawfully loan monies in the form of advancements to fund the construction project." This argument is unavailing.

McMillan is correct that OCGA § 43-41-17 (b) only applies to contracts "for the performance of work for which a residential contractor or general contractor

8

license is required."[5] Thus, the relevant question is whether the "debt instruments" involved here are "for the performance" of such work.[6] Given that the General Assembly has expressly instructed that the statutes pertaining to the profession of residential and general contracting are to be *liberally construed*, we have no trouble reaching the same conclusion as the trial court. Here, the undisputed evidence shows -- indeed, McMillan's own repeated admissions establish -- that the "debt instruments" executed in this case amount to nothing more than a financing arrangement by which McMillan recouped and secured his costs, expenses, and profit

---

[5] There are plainly other parameters set out in the relevant portion of OCGA § 43-41-17 (b) that control its application here, but those legal arguments have not been raised either below or on appeal, and, consequently, we will not sua sponte raise or address them. In light of the unique circumstances here and the nature of the arguments presented to this Court on appeal, our holding is limited to the facts of this case.

[6] There is no dispute that the work done at the bunker was of the nature requiring a contractor license.

arising from his unlicensed work on the bunker project.[7] Consequently, we agree with the trial court that the promissory note here was "for the performance" of work that would require a license; thus, there is no error in this respect.

---

[7] Both the dissent and McMillan support their positions, at least in part, with *R.R.R. Ltd. Partnership v. Recreation Svcs.*, 264 Ga. 494 (448 SE2d 211) (1994); their reliance on that decision is misplaced. First, the discussion in that case concerning the use of parole evidence to establish the illegality of a contract is pure dicta. In that decision, Justice Carley merely mused that "there [was] *some question* as to whether appellee's [parole] evidence should even be deemed admissible." Justice Carley never reached a conclusion as to the admissibility of such evidence in that case, and the appeal was resolved on other grounds. Id. at 495-496 (2). Moreover, in this case, there was no attempt to use parole evidence to "alter, vary, or change the unambiguous terms of a written contract." Instead, the trial court was merely tasked with determining whether the contracts here implicated OCGA § 43-41-17 (b). Parole evidence is admissible as to the surrounding circumstances of a contract to explain ambiguities and to aid in the construction of contracts so long as that evidence is not used to contradict or vary the terms of a written instrument. See *Kellos v Parker-Sharpe, Inc.*, 245 Ga. 130, 132 (1) (263 SE2d 138) (1980); *Abrams v. Massell*, 262 Ga. App. 761, 767 (5) (586 SE2d 435) (2003); see also OCGA § 24-3-4. Second, the statute involved in *R. R. R. Ltd* -- which is a federal provision imposing criminal liability where a lender makes an "extortionate extension of credit" -- did not control whether the underlying contract in that case was illegal or unenforceable. Here, on the other hand, the General Assembly has plainly declared unenforceable contracts for the performance of work requiring a contractor license where the worker lacks such a license. Third, and finally, in this case, unlike in *R. R. R. Ltd.*, the alleged illegality is not "incidental" to the contract; instead, it is undisputed that the debt instruments in this case are financing agreements, reached after Rodriguez was unable to secure a traditional loan, that are designed to do nothing but pay McMillan for services that, by law, he is unauthorized to provide.

2. McMillan also argues that, even if the promissory note is unenforceable that the guaranty signed by AAR Ventures "is a valid, stand-alone instrument that is enforceable irrespective of whether the promissory note is enforced." In support of this argument, McMillan points to language from the guaranty reflecting that "[t]he undertakings of [AAR Ventures] . . . are independent of the liabilities and obligations of the debtor" and that the guaranty is fully enforceable "notwithstanding any right or power of the debtor or anyone else to assert any claim or defense as to the validity or enforceability of the liabilities or obligations, and no such claim or defense shall impair or affect the obligations of [AAR Ventures]." We disagree.

As an initial matter, "[i]f the consideration [for a contract] is illegal in whole or in part, the whole promise fails." OCGA § 13-3-45. "An illegal consideration consists of any act or forbearance, or a promise to act or forbear, which is contrary to law or public policy." (Citation and punctuation omitted.) *Barger v. Garden Way*, 231 Ga. App. 723, 724-725 (499 SE2d 737) (1998). There can be no doubt that the consideration underlying the guaranty was the construction work to be performed on the bunker project by McMillan as an unlicensed contractor, which is prohibited by law. See OCGA §§ 43-41-12 (a) (1), 43-41-13, and 43-41-17 (a). Consequently, we

11

conclude that the guaranty and the deed to secure debt are unenforceable for this reason alone.

Notwithstanding the failure of consideration, we conclude that the guaranty and deed to secure debt are void as contrary to public policy. A contract is "said to be contrary to public policy [where] the General Assembly has declared it to be so, or [where] the consideration of the contract is contrary to good morals and contrary to law, or [where] the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law." (Citation omitted.) *Cleveland Motor Cars v. Bank of America., N.A.*, 295 Ga. App. 100, 102 (670 SE2d 892) (2008). See also OCGA § 13-8-1 ("A contract to do an immoral or illegal thing is void.").

Here, as discussed above, the parties executed a promissory note that amounts to nothing more than a financing arrangement by which McMillan is paid for his services as an unlicensed contractor. Such an agreement runs counter to the General Assembly's express intention of regulating the contracting profession to protect the public, and Appellant's work seemingly runs afoul of various statutory provisions. See, e.g., OCGA §§ 43-41-12 (a) (1) and 43-41-17 (a). As a corollary, the guaranty --

with its independent undertaking and waiver provisions -- merely advances the objective of the promissory notes, namely, ensuring that McMillan gets paid for his unlicensed work and further insulating him from the statutes designed to prevent such conduct. However, "[c]ontracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent can not be made the ground of a successful suit and are against public policy." (Citation and punctuation omitted.) *Nayani v. Hassanali*, 362 Ga. App. 313, 316 (2) (868 SE2d 465) (2022). Indeed, it is axiomatic "that one can not do indirectly that which the law does not allow to be done directly."[8] *Richmond County v. McElmurray*, 223 Ga. 440, 443 (156 SE2d 53) (1967).

Accordingly, the trial court properly concluded that neither the guaranty nor deed to secure debt were enforceable.[9]

For the reasons explained above, the judgment of the trial court is affirmed.

*Judgment affirmed. Hodges, J., concurs. McFadden, P. J., dissents.*

---

[8] The dissent's position, taken to its logical conclusion, would permit parties to enter into otherwise illegal contracts by simply refraining from mentioning the illegal scheme in the contract; not only does such a position wholly undermine a statutory scheme that the General Assembly has instructed this Court to construe liberally, but it would also put Georgia courts in a perilous position of legitimizing otherwise unlawful conduct.

[9] Our conclusions render McMillan's remaining arguments moot.

A25A0571. McMILLAN v. RODRIGUEZ et al.

McFADDEN, Presiding Judge, dissenting.

I respectfully dissent. In construing a statute, we must "keep[ ] in mind . . . the remedy" chosen by a legislature to address a particular issue. OCGA § 1-3-1 (a). We cannot expand or diminish that remedy.

The majority would expand the General Assembly's remedy for work performed by unlicensed contractors. By its plain language, OCGA § 43-41-17 (b) applies to contracts "for the performance of work for which a residential contractor

or commercial general contractor licensed is required . . . ." A promissory note is not such a contract; it "is an unconditional contract whereby the maker engages that he will pay the instrument according to its tenor." *R.R.R. Ltd. Partnership v. Recreational Svcs.*, 264 Ga. 494, 495 (2) (448 SE2d 211) (1994) (quoting *Dolanson Co. v. C & S Nat. Bank*, 242 Ga. 681, 683 (1) (b) (251 SE2d 274)(1978); punctuation omitted). Accord *Bentley v. Nat. Bank of Walton County*, 175 Ga. App. 732, 733 (1) (334 SE2d 331) (1985). Likewise, a guaranty is not such a contract; it is a contract "whereby a person obligates himself to pay the debt of another . . . in consideration of credit or indulgence or other benefit given to his principal[.]" OCGA § 10-7-1.

And neither the promissory note nor the guaranty in this case contains language that would make it a contract for the performance of work by a contractor. They do not refer to the performance of contracting work of any kind.see V2. 33-47, 39-41 Those documents are legal upon their face.

The majority would have us look to other agreements between the parties to read into the promissory note and guaranty terms that would, in the majority's view, make those documents contracts for the performance of work by a contractor. But the parol evidence rule does not permit us to go behind a facially legal contract in that way. "Where, upon its face, a written contract is legal, parol evidence is inadmissible,

2

in an action to enforce the contract, to show a private understanding of performance in some illegal manner." *R.R.R. Ltd. Partnership*, 264 Ga. at 495-496 (2) (quoting *County of Walton v. Powell & Davenport*, 94 Ga. 646 (19 SE 989) (1894); punctuation omitted). See also *Community & Southern Bank v. Clear Creek Properties*, 333 Ga. App. 280, 286 (775 SE2d 752) (2015) (incidental illegality is insufficient to render an otherwise valid promissory note unenforceable); *Bryant v. PMC Capital*, 244 Ga. App. 313, 315 (1) (535 SE2d 319) (2000) ("[A] contract is void only if the object or purpose of the contract is illegal. When the illegality is only tangential to the contract, it does not operate the void the contract."). So parol evidence that the agreement to build the bunker was unenforceable does not support a viable defense against the enforcement of the promissory note or guaranty. See *R.R.R. Ltd. Partnership*, 264 Ga. at 495-496 (2); *County of Walton*, 94 Ga. at 646.

The majority argues that those portions of the *R.R.R. Ltd. Partnership* decision regarding the inadmissibility of parol evidence are dicta. Maj. at 10 n. 7 See *R.R.R. Ltd. Partnership*, 264 Ga. at 495-496. They are not. Rather, they are part of an alternative ground by which the Court concluded that the trial court erred in granting an injunction preventing a foreclosure. Id. "Where a case presents two or more points, any one of which is sufficient to determine the ultimate issue, but the court actually

3

decides all such points, the case is an authoritative precedent as to every point decided, and none of such points can be regarded as having merely the status of a dictum." *QoS Networks Ltd. v. Warburg Pincus & Co.*, 294 Ga. App. 528, 532-533 (1) (b) (669 SE2d 536) (2008) (citation and punctuation omitted). But even if *R.R.R. Ltd. Partnership*'s statements on the application of the parol evidence rule are dicta, the legal principles in that decision, quoted above, are drawn from other Georgia authority. See *Dolanson Co.*, 242 Ga. at 683 (1) (b); *County of Walton*, 94 Ga. at 646.

For these reasons, I would reverse the trial court's judgment.