S90A0429, S90A0530. TRUST COMPANY BANK v. CITIZENS &
SOUTHERN TRUST COMPANY et al. (two cases).
S90A0431. CITIZENS & SOUTHERN TRUST COMPANY
v. TRUST COMPANY BANK.
(390 SE2d 589)

FLETCHER, Justice.

Trust Company Bank as successor trustee brought this equitable and statutory interpleader action in the Superior Court of Fulton County. Trust Co. interplead Citizens & Southern Trust Company, N.A., John A. Hartrampf, and Metro Brokers, Inc.[1] These interlocutory appeals arise from the denial of Trust Co.'s motion for summary judgment, from the denial of C&S's motion for summary judgment, and from the grant of Hartrampf's motion to amend his counterclaim adding Trust Co., individually, as a defendant. We affirm in part and reverse in part the denial of Trust Co.'s motion, reverse the denial of C&S's motion, and affirm the grant of Hartrampf's motion.

C&S was the original trustee of the trust created under the will of J. Shelly Charles. The trust consisted primarily of nonincome producing real estate. In 1983, C&S engaged the services of Hartrampf to market the property under a written exclusive brokerage agreement, and he secured the interest of the National Park Service. In February 1988, the NPS submitted its bid on the property at about the same time the beneficiary of the trust, through her attorney, Mr. Robert J. Hipple, made it known to C&S that she did not want the property sold to the NPS and that she desired to substitute the trustee.

C&S and Hipple negotiated the terms under which C&S would resign as trustee. The terms of the agreement were reduced in the order of the Superior Court of Cobb County dated April 4, 1988, which Hipple drafted, appointing Trust Co. as the successor trustee. Relevant in this order are paragraphs providing that C&S would inform Trust Co. of all assets, liabilities, income, and expenses of the trust at that time and that C&S was entitled to $60,000 as "compensation for extraordinary services performed by it as trustee in connection with the real estate held in the trust. . . ." Due to the trust's liquidity problems, this compensation was to be paid when the trust received at least $100,000 from the sale of any real property or from the award in certain pending condemnation proceedings.

NPS's first bid on the property was received by Hartrampf on February 9, 1988, which he immediately delivered to C&S. The first meeting to discuss the request that C&S resign was held on February 10, 1988, at which time C&S delivered to Hipple NPS's offer. At this meeting, C&S explained both the status of its efforts to sell the prop-

---

[1] The issues on appeal concerning Hartrampf and Metro Brokers are essentially the same, therefore they will be referred to collectively as "Hartrampf."

erty and Hartrampf's role in marketing it. On February 19, 1988, NPS submitted its second offer to purchase the property for $3,150,000. Pursuant to C&S's directions, Hartrampf delivered this second offer to Hipple. Trust Co. did not subsequently communicate with Hartrampf other than to inform him that the trust was not going to sell the property at that time, but would contact him if that should change. The NPS bought the property on August 25, 1988, from Trust Co., as successor trustee, at the same price as the second bid. There is deposition testimony that prior to the sale, someone associated with the trust or Trust Co. instructed the NPS not to communicate further with Hartrampf concerning the real estate.

1. (a) Trust Co. contends that the trial court erred in denying its motion for summary judgment on its interpleader action because it had no claim to the $60,000, but C&S and Hartrampf were both claiming it as compensation for marketing the property. See OCGA §§ 9-11-22 & 23-3-90. The record does not support this argument, and we find that the trial court did not commit error.

A review of the depositions reveals that there is some dispute as to whether the extraordinary compensation the trial court awarded was to make up for C&S's marketing and developing efforts of the property or to make up for the low statutory fees C&S had received over the fourteen years it had managed the trust. This factual dispute is not material because C&S's and Hartrampf's claims are not adverse or competing, even when the evidence is construed in favor of Trust Co. despite its being the moving party. There is no dispute that C&S only claims compensation under the court order as *trustee*, not in any other capacity,[2] while Hartrampf claims a fee as *broker*. The *trustee's* actions in marketing and developing the property clearly enhanced its value, for which the trustee would not have received any compensation under the then existing statutory schedule until the property generated income or was distributed. The *broker's* marketing efforts were not intended to increase the property's value, rather they were to find a ready, willing, and able purchaser for the property. C&S and Hartrampf are asserting separate and noncompeting claims. Therefore, Trust Co. was not entitled to summary judgment on its interpleader action. *Farris v. United States*, 230 Ga. 862, 865 (199 SE2d 782) (1973).

(b) Trust Co. next argues that it was entitled to summary judgment on Hartrampf's claims for broker's fees. Hartrampf had counterclaimed for an alleged breach of a commission agreement, for recovery under quantum meruit, for punitive damages, and for attorney

---

[2] Hipple himself, who represents Trust Co. as trustee in this appeal, admitted as much in his deposition.

fees. We find no error in the trial court's refusal to grant summary judgment on these counterclaims with the exception of the claim for punitive damages.

Trust Co. argues that there can be no breach of a commission agreement because not only had it not dealt with Hartrampf, but Hartrampf and C&S have admitted that there was no binding written commission agreement at the time the property was sold. There is, however, evidence that Hartrampf and C&S had an agreement that Hartrampf would continue to negotiate with the NPS on behalf of the trust and that he would receive a commission upon any sale to the NPS. While implicitly admitting that it would be bound by any such oral commission agreement, Trust Co. denies liability because Hartrampf had not obtained a signed offer from the NPS as the agreement required. This argument overlooks Trust Co.'s potential liability for the commissions due to Hartrampf as a result of Trust Co.'s possible interference with Hartrampf's brokerage rights. See *Kraft Land Services v. Hart Co.*, 165 Ga. App. 358, 362-63 (300 SE2d 186) (1983); cf. *Matthews v. Tucker Real Estate Co., Inc.*, 116 Ga. App. 214 (156 SE2d 669) (1967). Therefore, under the facts in the record, Trust Co. was not entitled to judgment as a matter of law on Hartrampf's breach of contract claim.

Trust Co. is also not entitled to summary judgment on Hartrampf's alternative quantum meruit claim. Trust Co. correctly argues that Hartrampf cannot recover under both claims, see *Futch v. Guthrie*, 176 Ga. App. 672, 674 (3) (337 SE2d 384) (1985), but it is clear that when the evidence is construed in favor of the nonmovant, Hartrampf has a claim for quantum meruit if the factfinder should find that there was no oral agreement. See *Sharp-Boylston Co. v. Lundeen*, 145 Ga. App. 672, 674-75 (244 SE2d 622) (1978). In this quantum meruit claim, as well as in the breach of contract claim, the mere fact alone that the trustees have changed during the time of any agreement or receipt of services will not operate to defeat the claims against the trust. OCGA § 53-13-8.

The trial court should have granted Trust Co. summary judgment on Hartrampf's claims for punitive damages, but properly denied the motion as to attorney fees. Punitive damages are not available in actions for breach of contract. OCGA §§ 13-6-10 & 51-12-5.1. On the issue of attorney fees, there is evidence creating a fact issue as to whether Trust Co. was acting in bad faith to freeze out Hartrampf from participating in the sale and was not merely refusing to pay a disputed claim. OCGA § 13-6-11.

2. Given our disposition in Division 1 (a) of this opinion, the trial court erred in denying C&S's motion for summary judgment on both

the interpleader action and its counterclaim for $60,000.[3]

3. Trust Co. has also appealed the trial court's order allowing Hartrampf to add a counterclaim against Trust Co. individually, an added party. OCGA § 9-11-13. Trust Co. contends that the trial court not only abused its discretion, but that it also did not have jurisdiction over the case because of the interlocutory appeal. We find no error.

A review of the record reveals that the trial court did not abuse its discretion in permitting Hartrampf to add an omitted counterclaim and to add Trust Co. individually. See *White v. Fidelity Nat. Bank*, 188 Ga. App. 539, 540 (373 SE2d 640) (1988). As for the trial court's jurisdiction, the judgments on appeal were not related to the bringing of a counterclaim against Trust Co. individually. *Cohran v. Carlin*, 249 Ga. 510, 512-13 (291 SE2d 538) (1982).

*Judgment in S90A0429 affirmed in part and reversed in part. Judgment in S90A0431 reversed. Judgment in S90A0530 affirmed. All the Justices concur.*

DECIDED APRIL 25, 1990.

*Robert J. Hipple, Thomas A. Soderberg,* for Trust Company Bank.

*Powell, Goldstein, Frazer & Murphy, Frank Love, Jr., J. Joel Mercer, Jr., Glass, McCullough, Sherrill & Harold, John A. Sherrill, L. James Weil, Jr.,* for Citizens & Southern Trust Company.

---

[3] In accordance with the terms of the order of the Superior Court of Cobb County, the compensation for extraordinary services totalling $60,000 was due on August 25, 1988, the date the property was sold for $3,150,000.