**SECOND DIVISION
MILLER, P. J.,
MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 21, 2020**

# In the Court of Appeals of Georgia

A20A1249. MERRILL LYNCH PIERCE, FENNER & SMITH, INC. v. LANDAU-TAYLOR, IN HIS CAPACITIES AS SUCCESSOR TRUSTEE OF THE GEORGIA SORTOR LERANGIS TRUST et al.

MILLER, Presiding Judge.

Harvey Investment Partners, LP and the successor trustees for the Sortor/Lerangis and Harvey families' trusts filed suit against Merrill Lynch, Pierce, Fenner & Smith, Inc., Bank of America Corporation, and Barbara Davne Bart after money was allegedly stolen from various accounts for the trusts and Harvey Investment Partners. Merrill Lynch and Barbara Bart filed a motion to compel arbitration and for a stay pending arbitration, arguing that the client relationship agreements for the accounts contain an arbitration clause, but the trial court determined that the plaintiffs are not bound by any arbitration clause in the

agreements. Merrill Lynch and Barbara Bart now appeal, arguing that (1) only the arbitrator, and not the trial court, can decide the validity of the client relationship agreements; and (2) the trusts and Harvey Investment Partners are bound by the arbitration clauses in the client relationship agreements. First, the trial court correctly ruled that it was authorized to decide whether the arbitration agreements bind the plaintiffs. Second, however, we conclude that (1) the successor trustees are bound by the arbitration clauses in the client relationship agreements which Randall Bart executed in his representative capacity; and (2) Randall Bart had agency authority to bind Harvey Investment Partners to the arbitration clauses to which he agreed in his representative capacity, and the record does not show that that authority was severed. Accordingly, we reverse.

> On appeal, this Court reviews the record de novo to determine whether the trial court's denial of the motion to compel arbitration is correct as a matter of law. However, we defer to the trial court's findings of fact upon which its denial was based unless those findings are clearly erroneous.

(Citation, punctuation, and footnote omitted.) *Schinazi v. Eden*, 351 Ga. App. 151, 156 (830 SE2d 531) (2019).

The record shows that Randall Bart was the trustee for four trusts for the Sortor/Lerangis family and two trusts for the Harvey family. According to the complaint, Randall Bart was also the registered agent for Harvey Investment Partners and the CEO, CFO, registered agent, and Secretary for LEH Asset Management, Inc., the general partner of Harvey Investment Partners. Beginning in 2007, Randall Bart opened numerous Merrill Lynch investment accounts for the trusts and Harvey Investment Partners and, in so doing, entered into client relationship agreements with Merrill Lynch. In executing the client relationship agreements for the trusts, Randall Bart denoted his title as "Trustee" or "TTEE." In the client relationship agreements for Harvey Investment Partners, he indicated that his title was the "Pres[.] of" LEH Asset Management. The client relationship agreements contain an arbitration clause whereby the signatory consents to arbitrating controversies arising with Merrill Lynch.

According to the complaint, Barbara Bart — Randall Bart's wife — began working for Merrill Lynch in 2009. The plaintiffs alleged that, at Randall Bart's direction, Barbara Bart opened lines of credit (loan management accounts) secured by the assets in the accounts for the Harvey family trusts, Harvey Investment Partners, and one of the Sortor/Lerangis family trusts. The plaintiffs further alleged that (1)

3

from 2010 to 2015, the Barts stole at least $1.8 million from the loan management accounts opened in the name of one of the Harvey family trusts; (2) from 2013 to 2014, the Barts stole at least $800,000 from the loan management accounts opened in the name of another Harvey family trust or Harvey Investment Partners; and (3) from 2012 to 2014, Randall Bart unlawfully transferred $266,350 from a loan management account opened in the name of one of the Sortor/Lerangis family trusts. The plaintiffs also alleged that from 2011 to 2017, the Barts colluded to steal money from investment accounts that had been established for the Sortor/Lerangis family trusts. The plaintiffs claimed that they learned of the alleged thefts after Randall Bart's death in 2017.

In 2019, Ben Landau-Taylor, as the successor trustee for the Sortor/Lerangis family trusts, J. William Griffin, as the successor trustee for the Harvey family trusts, and Harvey Investment Partners sued Merrill Lynch, Bank of America Corporation, and Barbara Bart. As against all the defendants, the plaintiffs asserted claims for breach of fiduciary duty, negligence, fraud, and violations of Georgia's Racketeer Influenced and Corrupt Organizations Act (OCGA § 16-14-1 et seq.). As to solely Barbara Bart, the plaintiffs asserted claims for civil conspiracy to commit fraud and securities fraud (OCGA § 10-5-1 et seq.). The complaint also alleged that Merrill

4

Lynch and Bank of America had aided and abetted a breach of fiduciary duty and fraud, and that control person liability (OCGA § 10-5-58 (g)) applied to these two corporate defendants.

Merrill Lynch and Barbara Bart filed a motion to compel arbitration under the Federal Arbitration Act (9 U. S. C. § 1 et seq.) and to stay proceedings pending the completion of arbitration. They acknowledged in the motion that Randall Bart was the trustee for the trusts and the president/CEO of Harvey Investment Partners' general partner, and they argued that the appellees' claims were all within the scope of the arbitration clauses in the Merrill Lynch client relationship agreements and that the plaintiffs were required to arbitrate their claims. The appellees opposed the motion, arguing that the only parties to the arbitration agreements were Randall Bart and Merrill Lynch, that Randall Bart had acted only on behalf of himself when executing the agreements, and that any agency authority Randall Bart had to bind the plaintiffs was severed because his purpose in opening the accounts was to defraud the families. The trial court denied the motion to compel arbitration, reasoning that (1) Randall Bart and Merrill Lynch were the only parties named in the agreements; (2) the defendants had failed to carry their burden of proving that Randall Bart had agency authority to execute the agreements; and (3) any agency relationship that

5

existed between Randall Bart and the plaintiffs was severed by Randall Bart's intent to defraud the trusts and Harvey Investments Partners when he opened the accounts. Merrill Lynch and Barbara Bart now appeal.

1. As their first enumeration of error, the appellants argue that the trial court erred in denying their motion to compel arbitration and stay proceedings because only an arbitrator, and not the trial court, is authorized to decide a challenge to the validity of the client relationship agreements. This argument fails because the trial court was authorized to determine whether the plaintiffs are bound by the arbitration agreements.

> Under both Georgia and federal law, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Therefore, the question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination.

(Citation omitted.) *Yates v. CACV of Colorado, LLC*, 303 Ga. App. 425, 430 (1) (693 SE2d 629) (2010). "[A]s the parties seeking arbitration, [the defendants] bear the burden of proving the existence of a valid and enforceable agreement to arbitrate[,]" which "is generally governed by state law principles of contract formation." (Citation omitted.) *United Health Svcs. of Ga., Inc. v. Alexander*, 342 Ga. App. 1, 2 (2) (802

6

SE2d 314) (2017); see also *Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 298 Ga. App. 204, 205-206 (1) - (2) (679 SE2d 785) (2009) (determining that, although the Federal Arbitration Act "govern[ed] the agreement to arbitrate" because the contract evidenced a transaction involving commerce, state law principles of contract formation applied in determining whether a signatory to the arbitration agreement was authorized to bind nonsignatory).

As explained above, the successor trustees and Harvey Investment Partners argued that the arbitration clauses could not be enforced against them. They reasoned that they are nonsignatories to the client relationship agreements, that Randall Bart acted solely on his own behalf, and that Randall Bart did not, in a capacity as an agent, bind them to the arbitration clauses because he was advancing his own interests when executing the client relationship agreements. Given these arguments, whether the appellees are bound by the arbitration agreements is a question of law for the court to decide. *Alexander*, supra, 342 Ga. App. at 2 (2) (trial court was tasked with deciding whether a valid and enforceable arbitration agreement existed between the decedent's estate and the defendants where the decedent's mother signed the agreement but the decedent was a nonsignatory and did not "personally" assent to the agreement); *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 509-510 (1) (a)

(765 SE2d 681) (2014) (trial court had to determine whether signatory was authorized to sign arbitration agreement on nonsignatory's behalf so as to enable its enforcement); see also *United Health Svcs. of Ga., Inc. v. Norton*, 300 Ga. 736, 737 (1) (797 SE2d 825) (2017) (assessing the trial court's determination that a wrongful death beneficiary could be bound by an arbitration agreement executed by the decedent and/or her power of attorney). Accordingly, the trial court correctly determined that it was authorized to decide whether the appellees are obligated to arbitrate their claims.

2. Next, Merrill Lynch and Barbara Bart argue that the trial court erred in refusing to compel arbitration because Randall Bart executed the arbitration agreements in his representative capacity as the trustee for the trusts and as the general partner of Harvey Investment Partners. We agree that the trial court erred in ruling that the appellees are not bound by the arbitration agreements which Randall Bart executed in his representative capacity.

Both contract principles and principles of agency law may determine who is bound to an arbitration agreement. *Comvest, L.L.C. v. Corp. Securities Group, Inc.*, 234 Ga. App. 277, 280 (3) (507 SE2d 21) (1998) ("A party may be bound by an agreement to arbitrate even in the absence of his signature. Ordinary contract

8

principles determine who is bound by a written arbitration agreement.") (citation and punctuation omitted); *Alexander*, supra, 342 Ga. App. at 3 (2) ("[T]raditional principles of agency law may bind a nonsignatory to an arbitration agreement.") (citation omitted). Mindful of these tenets, we examine whether the plaintiffs are bound to the arbitration agreements which Randall Bart signed in his representative capacity.

(a) *The family trusts*

The Supreme Court of Georgia has long held that "ordinarily a successor trustee is clothed with *all* the rights, duties and obligations of his predecessor[,]" except "where the power is given personally to a named individual[.]" (Emphasis supplied.) *Stephens v. First Nat. Bank of Atlanta*, 222 Ga. 423, 426 (2) (150 SE2d 865) (1966). See also *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 854 (2) (B) (797 SE2d 814) (2017) ("The common-law rules are still of force and effect in this State, except where they have been changed by express statutory enactment or by necessary implication.") (citation omitted). It follows, then, that a successor trustee stands in the shoes of his predecessor with regard to the predecessor's contractual duties which arose from the exercise of powers that are attached to the office of the trustee. For instance, in *Trust Co. Bank v. Citizens & Southern Trust Co.*, 260 Ga. 124

(390 SE2d 589) (1990), the original trustee for a trust engaged a marketer to market trust property under a written brokerage agreement. After the original trustee resigned, the successor trustee filed suit against the marketer and other corporate entities, and the marketer counterclaimed for an alleged breach of a commission agreement and recovery under quantum meruit. Id. Although the successor trustee argued that there could be no breach of contract because it had not dealt with the marketer, the Supreme Court held that "in the breach of contract claim, the mere fact alone that the trustees have changed during the time of any agreement or receipt of services will not operate to defeat the claims against the trust." Id. at 126 (1) (b). And as the appellate courts have long recognized, "[a] trust can only act through its trustees[.]" (Citation omitted.) *Leone Hall Price Found. v. Baker*, 276 Ga. 318 (1) (577 SE2d 779) (2003); *Wammock v. Smith*, 143 Ga. App. 186 (1) (237 SE2d 668) (1977) (a trust has "no independent legal existence" apart from the trustee).

> Georgia courts have provided a variety of factors to determine whether a trustee's powers are personal, or if the powers are attached to the office of the trustee. Courts consider the express language of the trust instrument, whether the powers are granted to the trustee alone, instead of to the "trustee and his successors," the size of the estate held in trust, and whether the powers could be exercised by the trustee alone.

10

However, the most important factor for Georgia courts is the intent of the settlor, as ascertained through the instrument.

*Lugue v. Hercules, Inc.*, 12 FSupp.2d 1351, 1356 (II) (S.D. Ga. 1997) (collecting cases). See also *PricewaterhouseCoopers, LLP v. Bassett*, 293 Ga. App. 274, 277 n.5 (1) (666 SE2d 721) (2008) (noting the general principle, as currently enunciated in 90A CJS Trusts § 346, that except where the powers conferred on a trustee by the trust instrument are clearly intended to be personal, the rights and powers of a trustee are annexed to the office, so as to pass to, and be capable of being dealt with and exercised by, a successor of the original trustee).

Here, the trust instruments demonstrate that Randall Bart's trustee power to execute the client relationship agreements was not a personal power but rather a power that was annexed to the office of the trustee such that the successor trustees would be "clothed" with his contractual duties under *Stephens*, supra. The trust instruments for the two Harvey family trusts and two of the Sortor/Lerangis family trusts give both the "Trustee, and the successors in office," the "general" power to execute instruments in the management, care, and disposition of the trust. Instruments for the remaining two Sortor/Lerangis trusts state that the trustee is charged with managing and investing the trust property and that his powers include, "without

11

limitation, the power to maintain and operate a margin account or margin accounts with any securities brokerage house." Both of these Sortor/Lerangis trust instruments further provide that "[a]ll successor trustees hereunder shall have the powers, authority, discretion and exemptions given to the original Trustee hereunder; and all provisions of this instrument relating to the original Trustee shall apply to all successor trustees."[1] Clearly, therefore, Randall Bart's authority as trustee to execute the Merrill Lynch client relationship agreements was not a personal power, but one attached to the office of the trustee. And because our Supreme Court has been clear that a successor trustee is ordinarily clothed with *all* the rights, duties, and obligations of his predecessor, a predecessor's contractual duty to arbitrate a dispute attaches to the successor trustee that assumes the office of the trustee. Because Randall Bart's power to execute contracts for the trusts was annexed to the office of the trustee, we must find that the predecessor trustee plaintiffs in this case are bound by the

[1] In its order denying the motion to compel arbitration and stay proceedings, the trial court also ruled that the defendants did not confirm that Randall Bart was authorized to manage trust property. As discussed, however, the trust instruments vested Randall Bart with such authority. Whether Merrill Lynch asked to examine the trust instruments does not dictate Randall Bart's actual authority to execute instruments in the management of the trust assets.

arbitration clauses to which Randall Bart agreed as the original trustee.[2] See, e.g., *Thomas v. Westlake*, 204 Cal. App. 4th 605, 613 n.5 (II) (A) (2) (2012) (holding that because a new trustee succeeds to all the rights, duties, and responsibilities of his predecessors, a successor trustee is bound by a valid arbitration agreement executed by a predecessor).

(b) *Harvey Investment Partners*

"A general partner in a limited partnership has the same rights and liabilities analogous to those of a partner in an ordinary general partnership[.]" (Citation omitted.) *North Augusta Assoc. Ltd. Partnership v. 1815 Exchange, Inc.*, 220 Ga. App. 790, 793 (3) (469 SE2d 759) (1996).

---

[2] We observe that the trust instruments contain an exculpatory clause which provides that no successor trustee shall have "any liability" for the acts or omissions of any prior fiduciary. We decline to read this clause to mean that contractual duties which arise from the exercise of powers attached to the office of the trustee cannot pass to the successor trustee. To interpret this exculpatory clause in this manner would directly contravene the principles set fort in both *Stephens* and *Trust Co.*, supra. See *Strange v. Towns*, 330 Ga. App. 876, 878 (769 SE2d 604) (2015) ("In construing a trust instrument it is the duty of a court to find the intention of the settlor and to effectuate that intention insofar as the language used and the rules of law will permit.") (citation omitted).

Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

OCGA § 14-8-9 (1).

As set forth in the appellees' own complaint, at the time that Randall Bart executed the client relationship agreements for Harvey Investment Partners, he was the CEO, CFO, registered agent, and secretary for Harvey Investment Partners' general partner, LEH Asset Management. Thus, Randall Bart possessed the agency authority to bind Harvey Investment Partners to the arbitration clauses in the client relationship agreements. See *Bryant v. Optima Intl., Inc.*, 339 Ga. App. 696, 697 (792 SE2d 489) (2016) (accountant controlled corporate entity where he served as the CEO, CFO, registered agent, and Secretary).

The trial court made a general ruling that any agency authority ceased at the time that Randall Bart executed the client relationship agreements because there was no "serious[] dispute" that Randall Bart intended to defraud the Harvey and

14

Sortor/Lerangis families when he opened the Merrill Lynch accounts. At this juncture, however, this ruling is not supported by the record.

Under Georgia law, "[i]t is contrary to public policy for an agent, without the full knowledge and consent of his principal, to do any act or make any contract in carrying out the business of his agency, the effect of which will be to bring the personal interests of the agent in antagonism with those of the principal." (Citation omitted.) *Spratlin, Harrington & Thomas, Inc. v. Hawn*, 116 Ga. App. 175, 178-179 (1) (156 SE2d 402) (1967); *Franco v. Stein Steel & Supply Co.*, 227 Ga. 92, 95 (1) (179 SE2d 88) (1970) ("Within the scope of his agency [an agent] cannot engage in the business of his principal for his personal benefit and profit. He cannot have any interest or do any act adverse to the interest of his principal. . . .").

The record before us does not show that Randall Bart was acting adversely to Harvey Investment Partners' interests *at the time that he opened the accounts.* While the appellees extensively allege in their complaint that Randall Bart defrauded and conspired to defraud the Harvey and Sortor/Lerangis families, they point to nothing in the record demonstrating that, when Randall Bart signed the client relationship agreements, he was actually intending his own personal benefit and profit or was otherwise acting adversely to Harvey Investment Partners' interests. See Restatement

15

(Third) of Agency, § 5.04, comment c (explaining that most cases which assess whether an agent was acting entirely for his own purpose involve a test that turns on the agent's motives "at the time of taking action"). Further, neither the trial court nor the appellees identify any concession by the appellants as to Randall Bart's supposed "adverse interest" at the time of opening the accounts. At this juncture, therefore, the record shows that Harvey Investment Partners would be bound by the arbitration agreements which Randall Bart executed for Harvey Investment Partners in his representative capacity.

Accordingly, we reverse the trial court's order denying the appellants' motion to compel arbitration and stay proceedings.

*Judgment reversed. Mercier and Coomer, JJ., concur.*